1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARIA GONZALES
*OBO J.C.G.*,

        Plaintiff,

                v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. 1:15-CV-03100-JTR

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

16
17
18
19
20
21
22

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF
No.  16, 21.  Attorney D. James Tree represents Marie Gonzales (Plaintiff), and
Special Assistant United States Attorney Leisa A. Wolf represents the
Commissioner of Social Security (Defendant).  The parties have consented to
proceed before a magistrate judge.  ECF No. 5.  After reviewing the administrative
record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion
for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

23

### JURISDICTION

24
25
26
27
28

On August 18, 2011, Plaintiff filed an application for Supplemental Security
Income (SSI) benefits on behalf of a child under age 18, with an alleged disability
onset date of December 3, 2000.  Tr. 291-296.  Plaintiff listed the child's disabling
conditions as hip problems and left leg and shoulder pain.  Tr. 332.
Plaintiff's claim was denied initially and on reconsideration, and she requested a

ORDER GRANTING DEFENDANT'S MOTION … - 1

hearing before an administrative law judge (ALJ).  Tr. 137-139, 143-145, 146.

On June 21, 2013, ALJ Ilene Sloan held a hearing, at which medical expert, Arthur Brovender, M.D., and Plaintiff, represented by counsel, and the minor child testified.  Tr. 41-66.  A second hearing was held on November 20, 2013, at which medical expert, John Rasmussen, M.D., Plaintiff, and the minor child testified.  Tr. 67-99.  On January 9, 2014, the ALJ issued a decision finding Plaintiff not disabled.  Tr. 19-34.  The Appeals Council declined review on April 13, 2015.  Tr. 1-8.  The ALJ's January 9, 2014, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on June 11, 2015.  ECF No. 1, 7.

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and thus, they are only briefly summarized here.  At the time of application for benefits, the child was ten years old.  Tr. 291.  The minor child was diagnosed with left developmental hip dislocation as an infant.  Tr. 497-498, 506.  She had a left hip open reduction and Pemberton osteotomy in December of 2003.  Tr. 479.  In September of 2009, she underwent a triple innominate osteotomy and femoral varus derotational osteotomy.  Tr. 606.  She had hardware removed by an operation in December 2009.  Tr. 514.  Following the third operation, it was noted that she had a 2 cm leg length discrepancy on the left.  Tr. 517.

At the first hearing, the child testified that "when I'm doing [physical education], I'll get pain again and I'll try to keep on walking but then the pain really comes."  Tr. 47.  "I cannot kick the ball because, like, I can't play like other kids, like, I don't know how to explain it," and the child continued:

> If they hurt me, like, the doctor said that I'll start bleeding and all that so, like, I can't play rough sports, like, basketball, soccer or any games,

ORDER GRANTING DEFENDANT'S MOTION … - 2

like, that so PE, like, I really want to play baseball but I have no sports.
I can't play nothing.  So I just walk around.

Tr. 48.  The child testified that she cannot run in physical education (PE) so she is always walking, she can sometimes jump, and she can climb.  Tr. 48-49.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales, 402 U.S. 389, 401 (1971)*.  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

To qualify for disability benefits, a child under the age of eighteen must

have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security Administration has enacted a three step sequential analysis to determine whether a child is eligible for SSI benefits on the basis of a disability. 20 C.F.R. § 416.924(a). First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as a slight abnormality or a combination of slight abnormalities that causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). Finally, if the ALJ finds a severe impairment, she must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the regulatory "Listing of Impairments." 20 C.F.R. § 416.924(d). An impairment is functionally equivalent to a listed impairment if it results in marked limitations in two areas of functioning or in extreme limitations in one area of functioning. 20 C.F.R. § 416.926a(a). An impairment is a "marked limitation" if it "seriously interferes with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

In determining whether an impairment is functionally equals a listing, the ALJ assesses the child's functioning in six domains in terms of her ability to: (1) acquire and use information; (2) attend and complete tasks; (3) interact and relate with others; (4) move about and manipulate objects; (5) care for oneself, and (6) her general health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found that the child

ORDER GRANTING DEFENDANT'S MOTION ... - 4

had never engaged in substantial gainful activity.  Tr. 22.  At step two, the ALJ found that the child suffered from the severe impairment of left congenital hip dysplasia.  *Id.*  At step three, the ALJ found that the child's impairments, alone and in combination, did not meet or functionally equal one of the listed impairments.  Tr. 24.  The ALJ concluded that the child did not have an "extreme" limitation in any domain of functioning or a "marked" limitation in two domains of functioning.  Tr. 28-33.  Accordingly, the ALJ concluded that the child was not disabled within the meaning of the Social Security Act since the date of the application, August 18, 2011.  Tr. 33.

### ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to properly consider the minor child's credibility, (2) failing to properly consider Plaintiff's credibility, (3) failing to properly consider and weigh the opinion of the school nurse, (4) giving great weight to teacher questionnaires, and (5) failing to properly weigh medical source opinions.

### DISCUSSION

**A.    Credibility of Minor Child**

Plaintiff argues that the ALJ erred in finding the minor child less than fully credible because the evidence cited to support the credibility determination predated the date of onset, as amended in the motion for summary judgment.  ECF No. 16 at 6-7.

Plaintiff attempts to amend the date of onset in her Motion for Summary Judgment.  ECF No. 16 at 1.  This Court is limited to a review of the final decision of the Commissioner.  42 U.S.C. § 405(g).  Here, the ALJ's decision is the final decision of the Commissioner, and the ALJ's decision is for the time period of August 18, 2011, to January 9, 2014.  Tr. 33.  Therefore, the Court will review the

ALJ's decision for the same time period.  Plaintiff cannot limit the relevant evidence by minimizing the relevant time period the ALJ is to consider after the fact.  Therefore, Plaintiff's argument is without merit and the Court will not disturb the ALJ's determination.

**B.    Credibility of Plaintiff**

Plaintiff challenges the ALJ's finding that she was less than fully credible. ECF No. 16 at 8.

Plaintiff is the parent of the claimant child.  The child testified at the June 21, 2013, hearing regarding her pain.  Tr. 47-56.  Since the child was able to testify and describe her symptoms, Plaintiff's testimony qualifies as the testimony of a lay witness and not the testimony of a claimant.  *See* S.S.R. 95-5p,

> [I]n the case of an individual under age 18 who is unable to adequately describe his or her symptoms, the description of the symptom(s) given by the person who is most familiar with the individual, such as a parent, other relative, or guardian, will be accepted as a statement of the individual's symptoms.

The testimony of lay witnesses, including family members, about their observations of the claimant's impairments must be considered by the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Sprague*, 812 F.2d at 1232.  Family members who see the claimant on a daily basis are competent to testify as to their observations.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  If the ALJ chooses to reject or discount the testimony of lay witnesses, she must give reasons that are germane to each witness. *Regennitter*, 166 F.3d at 1298; *Dodrill*, 12 F.3d at 919.

The ALJ concluded Plaintiff's testimony was (1) inconsistent with the longitudinal record, which showed an improvement in symptoms, and (2)

ORDER GRANTING DEFENDANT'S MOTION ... - 6

inconsistent with Ms. Gonzalez's lack of follow-up treatment indicating she believed the child was functioning fine and her symptoms were not as disabling as alleged.  Tr. 26.

The ALJ's first reason for finding Plaintiff less than fully credible, that it was inconsistent with the longitudinal record, is not a legally sufficient reason. The Ninth Circuit has held that an ALJ may discount lay testimony if it conflicts with the medical evidence in the record.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  But, the ALJ failed to provide any specifics on how Plaintiff's testimony was inconsistent with the longitudinal record, suggesting that the ALJ was asserting that Plaintiff's statements were not corroborated by the longitudinal record.  It is improper for the ALJ to discredit testimony of a lay witness because it was not supported by medical evidence in the record.  *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).  Either way, the ALJ's reason is insufficient.  If the testimony is inconsistent with the record, the ALJ's lack of specificity in how it was inconsistent is an assertion that cannot be supported by substantial evidence, and if the testimony was not corroborated by the longitudinal record, that rationale is not legally sufficient under *Bruce*.  However, any error resulting from this reason for finding Plaintiff less than fully credible is harmless because the ALJ's second reason is legally sufficient.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

The ALJ's second reason for finding Plaintiff less than fully credible, that her testimony was inconsistent with her lack of follow-up treatment indicating she believed the child was functioning fine and her symptoms were not as disabling as alleged, is a legally sufficient reason.  The ALJ cited Exhibit 4F, Page 8 (Tr. 499), which is a report from Kyle Heisey, M.D., dated January 17, 2003.  Tr. 26.  In the

report, the child's father indicated that he and her mother decided against surgery because the child was walking fine. Tr. 499. Plaintiff objects to reliance on this report to support the ALJ's conclusion because the report was created ten years prior to the amended date of onset. ECF No. 16 at 8. As discussed above, the relevant time period of the ALJ's decision was the date of application, August 18, 2011, through the date of the decision, January 9, 2014. Tr. 33-34. The Court will not accept an after-the-fact narrowed relevant period of time in an attempt to limit the relevant evidence upon judicial review. The Court acknowledges that the 2003 medical reports predate the application date by eight years, but Plaintiff alleged disability from December 3, 2000. Therefore, the 2003 report can be used to assess Plaintiff's credibility even if it predates the relevant time period. *See Smolen*, 80 F.3d at 1284 (in determining credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as a reputation for lying, prior inconsistent statements, and other testimony by that appears less than candid). As such, the ALJ's determination that Plaintiff is less than fully credible is without harmful error.

C.    **School Nurse**

Plaintiff challenges the weight the ALJ gave to the opinion of the child's school nurse, Ashley Couch, RN. ECF No. 16 at 8-12.

When it comes to opinion evidence, there is a distinction between acceptable medical sources and other sources. See S.S.R. 06-03p. "Accepted medical sources" include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 416.913(d). Ms. Couch is a nurse and therefore an "other source." The ALJ is required to consider observations by "other sources" regarding how an impairment affects a claimant's ability to work. To reject her testimony the ALJ

ORDER GRANTING DEFENDANT'S MOTION … - 8

was only required to provide reasons germane to her as a witness.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

On December 4, 2013, Ms. Couch wrote a letter discussing the child's pain and how the school accommodated her.  Tr. 647.  Ms. Couch noted that the child was precluded from participating in physical education classes, was allowed to move freely in class, was allowed to use the hallways at different times than other students to avoid injury, was transported door-to-door between school and home, and was allowed to remain seated while the rest of her class stood for long periods.  *Id*.  Ms. Couch also stated that the child had an individualized health care plan that allowed her to receive Ibuprofen as needed for pain, but there were times when the medication was not enough and the child missed class in order to lie down to ease the pain.  *Id*.  Furthermore, Ms. Couch noted that the child's limp resulted in teasing and bullying from other students.  *Id*.

The ALJ gave "little weight" to Ms. Couch's letter because (1) it was inconsistent with the child's testimony, and (2) it was inconsistent overall medical evidence of record.  Tr. 26-27.

In support of her first reason, the ALJ noted that the child testified that she was getting a "B" in her physical education class, "which suggests that she is able to participate in some activities," that she plays with other children at her school, and that she made no mention of being bullied or harassed.  Tr. 27.  The child testified that "when I'm doing PE, I'll get pain again and I'll try to keep on walking but then the pain really comes."  Tr. 47.  When asked how the pain affects her "as far as playing with other kids," the child responded "I cannot kick the ball because, like, I can't play like other kids, like, I don't know how to explain it," and she continued:

> If they hurt me, like, the doctor said that I'll start bleeding and all that so, like, I can't play rough sports, like, basketball, soccer or any games, like, that so PE, like, I really want to play baseball but I have no sports.

ORDER GRANTING DEFENDANT'S MOTION … - 9

I can't play nothing.  So I just walk around.

Tr. 48.  The child testified that she cannot run in PE so she is always walking, she can sometimes jump, and she can climb.  Tr. 48-49.  She stated that she had a "B" in PE "because, like, I can't do any sports so he just gives me a B."  Tr. 54.

Ms. Couch's letter stating that the child was precluded from participating in PE is not inconsistent with the child's testimony that she is limited to walking during PE.  Furthermore, just because the child did not mention being bullied at the hearing, when she was not questioned about being bullied, does not mean that the child's testimony was inconsistent with the nurse's statement.  Therefore, the ALJ's first reason for rejecting Ms. Couch's evidence is not legally sufficient.  However, any error from the ALJ's first reason is harmless because the ALJ provided a second legally sufficient reason for rejecting Ms. Couch's letter.  *See Tommasetti*, 533 F.3d at 1038.

In support of her second reason, the ALJ noted that the record did not indicate any significant problems with attendance.  Tr. 27.  The evidence from Wapato Middle School showed that from September 29, 2009, to June 11, 2010, there were seventeen attendance log entries, most correlating with Plaintiff bringing in a note to excuse the child.  Tr. 436.  In the 2010/2011 school year, there were six attendance log entries.  Tr. 437.  In the 2011/2012 school year, there were seven attendance log entries.  *Id*.  In the 2012/2013 school year, there were two attendance log entries.  *Id*.  An attendance calendar showed that from September 2012 through May 2013, the child missed a total of six full days with additional notations indicating that she missed some class periods on days she attended school.  Tr. 438-440.  The ALJ concluded that these records do not indicate any significant problems with attendance.  Tr. 27.  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.  Here, the ALJ found that this evidence did not support the school nurse's assertion.  Therefore, the Court will not disturb

ORDER GRANTING DEFENDANT'S MOTION … - 10

the ALJ's finding.

The ALJ did not commit harmful error in her treatment of evidence presented by the school nurse.

**D.    Teacher Questionnaires**

Plaintiff challenges the great weight the ALJ gave to the teacher questionnaires at Exhibits 2E, 5E, and 10E.  ECF No. 16 at 12.

Opinions that predate the alleged onset of disability are of limited relevance. See *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

The questionnaire at Exhibit 2E was completed on February 6, 2008.  Tr. 313-320.  The questionnaire at Exhibit 5E was completed on February 19, 2010. Tr. 338-345.  The questionnaire at Exhibit 10E was completed on December 9, 2010.  Tr. 373-380.  The Court recognizes that upon application, the Plaintiff had an alleged onset date of December 3, 2000.  Tr. 291.  However, Plaintiff had multiple prior applications for benefits, the last of which was denied on April 22, 2011.  Tr. 122-136.  The record does not contain any request to reopen any of these prior applications.  Therefore, the earliest onset date that could have been considered was April 23, 2011.[1]  All of the questionnaires pre-date the earliest possible onset date in this case.  Therefore, they are of limited relevance, and the ALJ errored in giving them great weight.

Additionally, Plaintiff asserts that all questionnaires were completed prior to Dr. Mosca's opinion, which is the onset date as amended in Plaintiff's Motion for Summary Judgment.  ECF No. 16 at 12.  The Court will not allow Plaintiff to

---

[1]Under the doctrine of res judicata, Plaintiff cannot relitigate the findings and decisions on the merits which become final as a result of a claimant's failure to seek administrative review after noticed of an adverse decision.  *Taylor v. Hackler*, 765 F.2d 872, 876 (9th Cir. 1985).

ORDER GRANTING DEFENDANT'S MOTION … - 11

reduce the pool of relevant evidence by reducing the relevant time period the ALJ was to consider after the fact. *See supra*. The relevant time period in this case was from August 18, 2011, the date of application, through January 9, 2014, the date of the ALJ decision. Again, all three of the opinions predate the earliest possible onset date and the relevant time period considered in the ALJ's decision. Therefore, the ALJ's determination giving great weight to these opinions is error. However, this error is harmless considering the ALJ also relied heavily upon the opinion of Dr. Rasmussen, who testified that the child had less than marked limitations in all domains of functioning. Tr. 27, 76-77. This reliance has been found to be free of error, as discussed below. *See Tommasetti*, 533 F.3d at 1038.

**E.    Medical Source Opinions**

Plaintiff challenges the weight the ALJ provided to the October 18, 2013, opinion of Vincent Mosca, M.D., and C. Mervyn Rasmussen, M.D. ECF No. 16 at 12-14.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first

physician.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct."  *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

### 1.    Vincent Mosca, M.D.

On October 18, 2013, Dr. Mosca completed a questionnaire in which he opined that the child functionally equaled a listing.  Tr. 638-640.  He stated that domains one, two and four were not applicable to the child.  *Id*.  But he opined that domain three was marked because "other students make fun of her and mock her about her limp."  Tr. 639.  He opined that domain five was marked because, "pain interferes with her emotional and physical state."  *Id*.  Then he opined domain six was extreme, stating "she has frequent bouts of pain which limits her activities. She should sit rather than stand.  She should not participate in any activities that would cause more irritations to her hip – that is most activities. Irritation/Inflammation to her hip will damage it requiring a sooner surgery."  Tr. 640.  When asked about the child's prognosis, he stated, "[p]ain will increase along with her mobility will decrease.  She will most likely require a hip replacement in her 20's if not sooner.  Artificial hips last about 15 years so she will require multiple hip replacements."  Tr. 638.

The ALJ gave "little weight" to Dr. Mosca's opinion because (1) it was inconsistent with Dr. Mosca's treatment notes and (2) the opinion contained an anomaly on page two under domain five.  Tr. 27-28.

To support her first reason, the ALJ noted that in August 2011, Dr. Mosca stated that the child was able to walk back and forth without any evidence of an

ORDER GRANTING DEFENDANT'S MOTION … - 13

obvious limp, she hopped three times on each leg, and she had some pain but was able to do and participate in many activities. Tr. 27-28. An ALJ may rely on internal inconsistencies in evaluating a physician's report. *Bayliss*, 427 F.3d at 1216. Plaintiff challenges the ALJ's reliance on the 2011 treatment notes as not being inconsistent with the 2013 opinion because it was penned over two years prior to the 2013 opinion. ECF No. 16 at 13-14. In addition to the August 17, 2011, evaluation by Dr. Mosca, the record contains an evaluation performed November 26, 2012, at which the child stated that there was one time about two months prior that she had a lot of pain in her left hip and had to be taken home from school, but at the time of the evaluation, she was completely pain-free and active. Tr. 635. Dr. Mosca noted she walked with a nonantalgic gait and no limp. Tr. 636. He stated that the child was "continuing to do well." *Id*.

Having reviewed the record as a whole, the opinion of Dr. Mosca is not supported by his treatment notes contained in the record. The Court acknowledges that these treatment notes are years prior to the October 18, 2013, opinion, but the record lacks a recent evaluation from Dr. Mosca that corroborates the October 18, 2013, opinion. As such, the Court will not disturb the ALJ's determination.

The ALJ's second reason, an anomaly on the page two, under domain five, is not a legally sufficient reason to give Dr. Mosca's opinion little weight. On the form completed by Dr. Mosca, under domain five there is a pen mark that appears in the shape of an "r" or an unfinished "n." Tr. 639. The ALJ hypothesized that it "appears as if something else was written under the paragraph but either not completed, erased, etc." Tr. 28. If the ALJ determined that this notation rendered Dr. Mosca's opinion ambiguous he was required to reach out to Dr. Mosca and request a clarification. *See Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001) (the ALJ has a duty to develop the record with the evidence is ambiguous). However, any error resulting from the ALJ's reliance on the anomaly is harmless because the ALJ provided another legally sufficient reason to support his rejection

of Dr. Mosca's opinion. *See Tommasetti*, 533 F.3d at 1038.

### 2.      C. Mervyn Rasmussen, M.D.

Plaintiff challenges the "great weight" given to Dr. Rasmussen's testimony at the hearing.  ECF No. 16 at 12-13.

Dr. Rasmussen was a nonexamining physician who testified at the second hearing.  Tr. 74-98.  Dr. Rasmussen testified that the child did not meet listing 101.02, Major Dysfunction of the Joints.  Tr. 75.  As for the domains, Dr. Rasmussen testified that the child had no limitations in acquiring and using information, attending and completing tasks, and interacting and relating to others, and caring for yourself and less than marked in moving about and manipulating objects and health and physical well-being.  Tr. 75-76.

The ALJ gave "significant weight" to the opinion of Dr. Rasmussen because he had an opportunity to review the record and his opinion was consistent with objective and physical exam findings.  Tr. 27.  When a treating or examining physician's opinion is contradicted by another doctor, the "[Commissioner] must determine credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956–57 (9th Cir. 2002).  "The opinions of a nonexamining physician may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."  *Id*.  The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.  *Batson*, 359 F.3d at 1195.

The ALJ determined that the opinion of treating physician Dr. Mosca was of little evidentiary value because the opinion was not supported by his own treatment notes.  Tr. 27-28.  The ALJ turned to the opinion of nonexamining physician, Dr. Rasmussen, and concluded that it was consistent with objective medical evidence, specifically that the claimant was fairly active and independent in activities of daily living despite the imaging that showed the femoral head under acetabulum

ORDER GRANTING DEFENDANT'S MOTION … - 15

warranting future surgery.  Tr. 27.  Since Dr. Rasmussen's opinion is consistent
with the medical evidence, his opinion can be considered substantial evidence even
though he is a nonexamining physician.  Therefore, the ALJ's determination
assigning his opinion significant weight is without error.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the
ALJ's decision is supported by substantial evidence and free of harmful legal error.
Accordingly, **IT IS HEREBY ORDERED**:

    1.    Defendant's Motion for Summary Judgment, **ECF No. 21**, is
**GRANTED.**

    2.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy
to counsel for plaintiff and defendant. Judgment shall be entered for Defendant and
the file shall be CLOSED.

DATED May 11, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION … - 16